# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

**HECTOR SIGIFREDO RIVERA ROSA,**
> **On his own behalf and on behalf of all those similarly situated, through his next friend, JULIO RIVERA;**

**JUAN CARLOS ACENSIO Y ACENSIO,**
> **On his own behalf and on behalf of all those similarly situated, through his next friend, RUTH ISABEL ACENSIO;**

**JOSE NEFTALI ARIAS HERNANDEZ,**
> **On his own behalf and on behalf of all those similarly situated, through his next friend, ZULMA CHAVARRIA VANEGAS;**

**JAVIER ALEXANDER REYES VIGIL,**
> **On his own behalf and on behalf of all those similarly situated, through his next friend, ZULEYMA STEFANY SANCHEZ;**

**JOSE WILLIAM RECINOS NOLASCO,**
> **On his own behalf and on behalf of all those similarly situated, through his next friend, JOSE IVAN LOPEZ ;**

> **PETITIONERS/PLAINTIFFS**

**v.**

**KEVIN K. McALEENAN,**
> **Acting Secretary, U.S. Department of Homeland Security and Commissioner, United States Customs & Border Protection,**

**JOHN P. SANDERS,**
> **Acting Commissioner of CBP.**

**CARLA PROVOST,**
> **Chief of the United States Border Patrol,**

**RODOLFO KARISCH,**
     **Chief Patrol Agent-Rio Grande Valley Sector, and**
**MICHAEL J. PITTS, Field Office Director, ICE/ERO, Port Isabel**
     **Service Processing Center,**

     **RESPONDENTS/DEFENDANTS.**

**PETITION FOR WRIT OF HABEAS CORPUS, CLASS ACTION
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, and
REQUEST FOR TEMPORARY RESTRAINING ORDER,**

## I. INTRODUCTION

1. Petitioners and the class they seek to represent are asylum seekers and other non-citizens who have been, are, or will be confined in Customs and Border Protection ("CBP") facilities of the Border Patrol ("Border Patrol"), a division of CBP.

2. Petitioners have been or will be subjected to inhumane and illegal treatment: [1] packed into overcrowded cells and detained for weeks without adequate food, water, medical care and sanitation facilities, or access to counsel. Even minor children are subject to these horrendous conditions. [2]

3. By law, when on being detained, an undocumented immigrant expresses a fear of returning to his/her home country, s/he is entitled to a prompt credible or reasonable fear interview by an Asylum Officer. However, these interviews cannot be conducted because the CBP facilities which house Plaintiffs and the class they

---

[1] A Salvadoran, who crossed with his minor daughter, recently died after being confined by the McAllen CBP for about a week. *See* Exhibit A, incorporated herein.

[2] *See,* (sealed) Exhibit B, incorporated herein.

seek to represent are not equipped for detainees to consult with counsel or other persons, as is their right before having such an interview. 8 C.F.R. §235.3(b)(4)(B).

4. On information and belief, it is alleged that some members of the putative class have been pressured into signing documents whose contents are unknown, or have knowingly but involuntarily relinquished their right to apply for asylum, and have been removed. Others, minors, have signed statements they know to be false, alleging that they are not minors, in order to be transferred to ICE facilities.

5. Attorneys are not allowed to visit those detained at these facilities, so counsel is unable to communicate directly with them, or obtain their signatures on G-28s, which DHS requires to be recognized as their attorneys. Therefore, Petitioners bring this action through their "next friends," on their own behalf and on behalf of all others similarly situated, to challenge the lack of proper facilities and unbearable conditions in the holding cells where they were held, the lack of access to counsel and legal materials, and the failure to promptly move those who express a fear of return to ICE facilities where credible/reasonable fear interviews can be conducted in accordance with law.

6. It has been reported that, as of this morning, CBP has begun to transfer asylum seekers to Mexico to await hearings under what is known as the Migrant Protection Protocols ("MPP"). On information and belief, it is alleged that prior to such

transfers, Respondents are not giving them the credible/reasonable fear interviews to which they are entitled as a matter of law if they express a fear of returning to their home countries. 8 C.F.R. 208.30 and §208.31.[3] For this reason, Plaintiffs request a temporary restraining order, restraining Respondents from removing Petitioners from the jurisdiction of the Court until further order of the Court. [4]

7. Only after being transferred to ICE custody, are those who claim a fear of return allowed attorney visits, and thereafter given credible/reasonable fear interviews. If they pass, removal proceedings are commenced, 8 U.S.C. §1229a and 8 C.F.R. 208.30(a).[5] If not, limited IJ review of the denial can occur, 8 C.F.R. §208.31(g).

---

[3]     Some class members, such as Yaneth Del Carmen Perez Valle, have been previously detained in CBP facilities and removed, and are subject to reinstatement. They are entitled to reasonable fear interviews under 8 C.F.R. §208.31(a). However, the removal would have been illegal if s/he had expressed a fear of return but was not given a credible fear interview, and thus could be contested as a gross miscarriage of justice under *Matter of Malone*, 11 I&N Dec. 730,731–32 (BIA 1966) (finding a gross miscarriage of justice when "on the basis of judicial and administrative decisions existing at the time of the original proceeding, no order of deportation should have entered"). This could also apply if the person was detained so long under the horrific conditions that currently exist that s/he became desperate and "agreed" to be removed, or if s/he was tricked into signing a document without understanding its contents.

[4] For information about the program,*see* https://docs.google.com/document/d/ 1Dfm9Kt825xarBj3siksOjEKITwSi0HCSDJcijuAsih8/edit?usp=sharing

[5]     Some class members, such as Yaneth Del Carmen Perez Valle, have been previously detained in CBP facilities and removed, and are subject to reinstatement. They are entitled to reasonable fear interviews under 8 C.F.R. §208.31(a). However, the removal would have been illegal if s/he had expressed a fear of return but was not given a credible fear interview, and thus could be contested as a gross miscarriage of justice under *Matter of Malone*, 11 I&N Dec. 730,731–32 (BIA 1966) (finding a gross miscarriage of justice when "on the basis of judicial and administrative decisions

8.   After transfer to ICE custody, those who claim a fear of return are allowed attorney visits, and thereafter given credible/reasonable fear interviews.  If they pass, removal proceedings are commenced, 8 U.S.C. §1229a and 8 C.F.R. 208.30(a).[6]  If not, limited IJ review of the denial can occur, 8 C.F.R. §208.31(g).

9.   After transfer to ICE custody, Petitioners are allowed attorney visits, and those who claim a fear of return are thereafter given credible/reasonable fear interviews. If they pass, removal proceedings are commenced, 8 U.S.C. §1229a and 8 C.F.R. 208.30(a).  If not, limited IJ review of the denial can occur, 8 C.F.R. §208.31(g).

10.   The effect, if not the intent, of holding asylum seekers under inhumane conditions, where credible/reasonable fear interviews cannot be and are not conducted, is two-fold.  It causes some detainees to become so desperate that they

existing at the time of the original proceeding, no order of deportation should have entered"). This could also apply if the person was detained so long under the horrific conditions that currently exist that s/he became desperate and "agreed" to be removed, or if s/he was tricked into signing a document without understanding its contents.

[6]   Some class members, such as Yaneth Del Carmen Perez Valle, have been previously detained in CBP facilities and removed, and are subject to reinstatement. They are entitled to reasonable fear interviews under 8 C.F.R. §208.31(a).  However, the removal would have been illegal if s/he had expressed a fear of return but was not given a credible fear interview, and thus could be contested as a gross miscarriage of justice under *Matter of Malone*, 11 I&N Dec. 730, 731–32 (BIA 1966) (finding a gross miscarriage of justice when "on the basis of judicial and administrative decisions existing at the time of the original proceeding, no order of deportation should have entered"). This could also apply if the person was detained so long under the horrific conditions that currently exist that s/he became desperate and "agreed" to be removed, or if s/he was tricked into signing a document without understanding its contents.

relinquish their legal rights and accept removal, simply to escape the unbearable conditions.[7] This, in turn, significantly contributes to overcrowding, both at CBP and ICE facilities, and feeds the narrative that the overcrowding problem at the border is due solely to the large number of asylum seekers crossing our border.[8]

11. It is unknown what percentage of the detainees in CBP facilities expressed a fear of returning to their home countries. Logically, those who have been detained the longest are likely to have the strongest fear of returning. This may be why such a high percentage of the named Petitioners in these actions did express such a fear.

12. Petitioners are imprisoned under color of the immigration laws. The named Petitioners in all these cases were held at CBP facilities for far more than seventy-two hours; some for up to eight weeks, and even though they had expressed a fear of returning to their home countries,[9] they have not been provided with credible

---

[7] Some in this category may return, this time without surrendering to CBP, and in a more dangerous manner, hoping to find refuge and be able to apply for asylum without having to repeat the horrendous experience of detention in CBP facilities.

[8] Until recently, most of those who passed the credible fear interviews were released on bond or with an ankle monitor during the asylum proceedings. A nation-wide injunction requiring that this practice be reinstated was stayed pending review. *Padilla v. ICE*, 2:18-cv-928-MJP (W.D. Wash.). Under that decision, immigration courts must continue to provide bond hearings to individuals fleeing persecution who enter the U.S. without inspection, are placed in expedited removal proceedings, and pass their credible fear interviews. The injunction provided that bond hearings must take place within seven days of request and include certain procedural protections.

[9] The criteria for passing a credible fear interview have become significantly more restrictive than when the initial action, *Gonzalez-Recinos,* 1:19-cv-95, was filed. Their "next friends" understand this but hope that the instant action will at least enable

fear interviews, as required by 8 U.S.C. §1229a and 8 C.F.R. §208.30(a).

13.   For example, Petitioner Lopez-Lopez, in 1:19-cv-126, expressed a fear of being returned to El Salvador when he was detained by CBP. [10] Yet he been detained for 55 days when was transferred to ICE custody, a few hours after, and as a direct result of, the filing of that habeas action.

14.   This petition seeks the release of the named Petitioners, either with electronic monitors, or a bond of no more than $2,500. Their unlawful confinement by CBP has caused them significant physical and psychological harm.  They all have "next friends" who are lawfully in the United States, and are ready, willing and able to post a bond of $2,500, provide them with the medical and psychological support they require, and ensure their appearance at all immigration proceedings.

15.   Petitioners' lengthy imprisonment was unlawful due to the confluence of three unlawful government practices: first, they were held virtually incommunicado. They had almost no contact with the outside world, and most particularly, they were held in a facility precluding access by attorneys or family members, and had little if any access to telephones. Second, although Respondents ostensibly acted under color of the immigration laws, they incarcerated Petitioners for long periods without issuing charging documents or holding credible/reasonable fear interviews. Third, Respondents imprisoned them in overcrowded holding cells, with

_____

them to be transferred from the horrendous conditions in which they are being held.
   [10]  Sealed Exhibit C, incorporated herein.

inadequate food, water, sanitation, medical, and sleeping facilities; facilities that are inappropriate for overnight stays - let alone for multiple-week incarceration.

16. The named Petitioners surrendered to or were apprehended by CBP between late May, 2019, and early July, 2019, at or near the border with Mexico. Such persons are often held by CBP for extended periods where attorneys are not allowed to visit. The conditions in the holding cells are dangerous and inhumane, particularly if CBP detains in the same cells individuals whom they know or have reason to believe have committed crimes other than 8 U.S.C. §1325.

17. Detaining Petitioners in facilities which do not allow access to counsel or legal materials violates *Nunez v. Boldin*, 537 F.Supp. 578 (S.D.Tex), appeal dismissed, *Nunez v. Boldin*. 692 F.2d 755 (Table) (5th Cir. 1982), holding that immigration officials must not only refrain from placing obstacles in way of communications between detainees and their attorneys, but are obligated to affirmatively provide them with legal assistance, and that besides providing reasonable access to attorneys, such legal assistance may take the form of access to attorney agents and other such legal resources as law libraries, legal forms, and writing materials.

## II. JURISDICTION AND VENUE

18. Jurisdiction lies in 28 U.S.C. §2241 (habeas corpus) and §1331 (federal question) and the Trafficking Victims. Protection Reauthorization Act ("TVPRA").

19. Venue is proper since the events giving rise to the action occurred in this judicial District. Respondents are sued only in their official capacities.

### III.  THE PARTIES

20.   Hector Sigifredo Rivera Rosa is a native and citizen of El Salvador, who on information and belief,  has been detained by Respondents since late May, 2019, and is currently detained at an unknown facility in the Rio Grande Valley Sector of CBP.  He is suing through his next friend, Julio Rivera, on his own behalf, and on behalf of all others similarly situated.

21.   Juan Carlos Acensio Y Acensio is a native and citizen of Guatemala, who on information and belief, has been detained by CBP since mid-June, 2019, and is currently detained at an unknown facility in the Rio Grande Valley Sector of CBP. He is suing through his next friend, Ruth Isabel Acensio, on his own behalf, and on behalf of all others similarly situated.

22.  Jose Neftali Arias Hernandez is a native and citizen of El Salvador, who On information and belief,  has been detained by Respondents since the late May, 2019, and is currently detained at an unknown facility in the Rio Grande Valley Sector of CBP.  He is suing through his next friend, Zulma Chavarria Vanegas, on his own behalf, and on behalf of all others similarly situated.

23.   Javier Alexander Reyes Vigil is a native and citizen of El Salvador, who on

information and belief,  has been detained by Respondents since the first week of June, 2019, and is currently detained at an unknown facility in the Rio Grande Valley Sector of CBP.   He is suing through his next friend, Zuleyma Stefany Sanchez, on his own behalf, and on behalf of all others similarly situated.

24.    Jose William Recinos Nolasco is a native and citizen of El Salvador, who on information and belief, has been detained by Respondents since May, 2019, and is currently detained at an unknown facility in the Rio Grande Valley Sector of CBP. He is suing through his next friend, Jose Ivan Lopez, on his own behalf, and on behalf of all others similarly situated.

25.   Kevin K. McAleenan is the duly appointed acting Secretary of the U.S. Department of Homeland Security and duly appointed Commissioner of the United States Customs and Border Protection.   He is sued in his official capacity only.

26. Respondent John P. Sanders is the Acting Commissioner of CBP.  He is named in his official capacity only.

27.  Carla Provost is the duly appointed Chief of the United States Border Patrol, and is being sued in her official capacity only.

28. Rodolfo Karisch is the the duly appointed Chief Patrol Agent – Rio Grande Valley Sector and is being sued in his official capacity only.

29. Michael J. Pitts is the duly appointed Field Office Director – Port Isabel

Service Detention Center -ICE/ERO and is being sued in his official capacity.

## IV.  THE FACTS AND APPLICABLE LAW

30.  The named Petitioners are civil detainees who, on information and belief, are detained in U.S. Customs and Border Protection ("CBP") facilities within the Rio Grande Valley Sector of the U.S. Border Patrol ("Border Patrol").    During their detention, Petitioners and the class they seek to represent have been or will be subjected to inhumane treatment and harsh conditions. It is the pattern or practice of Respondents to pack them into overcrowded cells for lengthy periods, where they are denied adequate food, water, medical attention, and sanitation facilities. On information and belief, Petitioners allege that the food Respondents provide is grossly inadequate, the "drinking" water smells and is heavily chlorinated, the toilets are unsanitary, showering or bathing facilities, and the ability to make phone calls are virtually non-existent, medical assistance is restricted and often denied, and they must sleep on the floor or even standing up, in some cases, next to overflowing toilets.  It is also the pattern or practice of Respondents to deny access to family members and legal counsel. *See*, Exhibit D, incorporated herein. Petitioners bring this action to seek relief from the unbearable conditions in CBP's holding facilities.

31.  Petitioners sue not only on their own behalf, but on behalf of all others similarly situated.  On information and belief, many members of the putative class

have been detained under these conditions for several weeks.

32. On information and belief, some detainees at these facilities have been so deprived of basic necessities that they have involuntarily signed documents, in some cases making false statements regarding their ages, in order to avoid treatment as juveniles, [11] or documents the contents of which they are unaware, but which most likely waive their rights under the Immigration and Nationality Act, including the right to apply for asylum, and without adequate screening as to their fear of returning to their native countries and means of learning about potential lawful means of avoiding prompt removal.

33. The notoriously abysmal conditions of CBP facilities throughout the country are well-documented in federal litigation and third-party reports. These facilities, termed "hieleras" (Spanish for "freezers") are typically small, concrete rooms with concrete or metal benches, which are maintained at uncomfortably low temperatures. In Customs and Border Protection's own words, they are "not designed for sleeping": they have no beds and showers are not guaranteed. Nevertheless, CBP routinely imprisons individuals in Border Patrol field stations for days or even weeks. Exhibit D. Many individuals suffer severe mental distress due to the extreme conditions under which they are detained.

---

[11] *See*, sealed Exhibit E, incorporated herein

34. Courts across the country have made factual findings about the horrific conditions in Border Patrol holding facilities. For example, the District Court of Arizona granted, and the Ninth Circuit affirmed, a preliminary injunction ordering Border Patrol to address grave deficiencies in the Tucson Sector stations' holding facilities. *Doe v. Kelly*, 878 F.3d 710, 716 (9th Cir. 2017) (detailing unsanitary and unsafe conditions); *see also* documents from *L.B.,* and *Flores v. Sessions*, No. 85-4544, ECF No. 459-1 (C.D. Cal. July 16, 2018) (July 2018 Memorandum of Points and Authorities in Support of Plaintiffs' Motion to Enforce Settlement detailing physical and verbal assault, unsanitary drinking water, inedible food, freezing cell temperatures and inadequate sleeping conditions in ICE detention centers and Border Patrol stations).[12]

35. Respondents assert that they can imprison immigrants in temporary holding facilities with little or no ability to contact the outside world, and need not provide for either attorney or family visitation at facilities under CBP control.

36. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

---

[12] In a recent oral argument before the Ninth Circuit, counsel for Defendants in *Flores* asserted that the Government was not required to provide detained minors with soap, toothbrushes, or other basic sanitation needs. The relevant transcript will be provided at a later date.

37. Respondents' conduct violates the Fifth Amendment's prohibition against holding a prisoner incommunicado. As noted in *Halvorsen v. Baird*, 146 F.3d 680, 688–89 (9th Cir. 1998):

> There is a well established tradition against holding prisoners incommunicado in the United States. It would be hard to find an American who thought people could be picked up by a policeman and held incommunicado, without the opportunity to let anyone know where they were, and without the opportunity for anyone on the outside looking for them to confirm where they were.

This right applies to civil detainees as well as those in criminal custody. *Id.*:

> That a person is committed civilly ... cannot diminish his right not to be held incommunicado.

38. Respondents bar Petitioners from receiving attorney visits, violating their right to counsel and the courts. Access to counsel in immigration proceedings is well established under both the Constitution and the Immigration and Nationality Act. U.S. Const., Am. 5; 8 U.S.C. §1229a. *See also, Nunez v. Boldin*, 537 F.Supp. 578 (S.D.Tex), appeal dismissed, *Nunez v. Boldin*. 692 F.2d 755 (Table) (5th Cir. 1982) The inability to communicate with counsel also violates their right of access to the courts, as they have no means of learning their rights, let alone filing actions to enforce them. *See, e.g., Christopher v. Harbury*, 536 U.S. 403, 414–15 (2002).

39. The Due Process Clause guarantees that all noncitizens must "be free from detention that is arbitrary or capricious." *Zadvydas*, 533 U.S. at 721 (Kennedy, J., dissenting); see also *Mathews v. Diaz*, 426 U.S. 67, 77, 87 (1976) (confirming that

those "whose presence in this country is unlawful, involuntary, or transitory" have due process rights). Therefore, to comply with the Due Process Clause, detention must be reasonable in relation to its purpose. *Jackson v. Indiana*, 406 U.S. 715, 738 (1972). The basic purposes of immigration detention are to prevent flight and danger, and, if there is no relief from removal, to ensure the detainee appears for removal. *See Zadvydas*, 533 U.S. at 699 (explaining the relevant detention statute's "basic purpose" as "to assure the alien's presence at the moment of removal").

40. Respondents have imprisoned Petitioners under punitive conditions of confinement, even though they are not subject to punishment for any crimes. This violates the Fifth Amendment. *Wong Wing v. U.S.*, 163 U.S. 228, 236-38 (1896).

27. Whereas it was previously the Border Patrol's position that "a detainee should not be held for more than 12 hours," in 2015 - with no intervening change in the conditions of its holding centers - the agency "updated" its standards: now, "[d]etainees should generally not be held for longer than 72 hours in CBP hold rooms or holding facilities." U.S. Customs and Border Protection, "National Standards of Transport, Escort, Detention, and Search (Oct. 2015).

41. It is submitted that CBP is wrong: under the conditions in the Border Patrol holding facilities, detention longer than twelve hours violates detainees' constitutional rights, and may be a contributing factor in preventable deaths. *See Doe v. Kelly, supra,* (affirming injunction requiring Border Patrol facilities in the

Tucson Sector to provide mats and Mylar blankets to immigrants held longer than 12 hours because "a person who has been detained in a station for over 12 hours . . . has a right to lie down and rest.").   Regardless, Petitioners' detention far exceeds the legal limit and CBP's own policy.

## V.  CLASS ALLEGATIONS

42. Petitioners incorporate by reference the allegations of paragraphs 1 through 41.

43.  Petitioners seek to represent the following class:

> Individuals identified as non-citizens of the United States who have been or will be detained by Respondents at CBP holding facilities, with the exception of any detainee whom CBP has reason to believe has been convicted of any offense which would be classified as a "violent or dangerous" crime within the meaning of 8 C.F.R. §212.7(d).

44.   On information and belief, Petitioners allege that, as so defined, the class numbers in the hundreds, not counting future members.

45.   The putative class is so numerous that joinder of all members would be impracticable.  Joinder is particularly impracticable since the classes include future members, and putative class members do not have access to counsel.

46.   The claims of the representative parties are typical of the claims of the class.

47.   The representative parties, and their counsel, can and will fairly and adequately protect the interests of the classes.  Class counsel are experienced in class action litigation and in litigation of the type of claims raised here.

48.   There are questions of law and fact that are common to the classes which

predominate over any individual questions. Further, Respondents have acted, or refused to act, on grounds generally applicable to the class, making appropriate final injunctive and declaratory relief, with respect to the class as a whole.

## V. CAUSES OF ACTION
## A. HABEAS CORPUS

49. Petitioners incorporate by reference the allegations of paragraph 1-48 above.

50. Petitioners' detention, without access to counsel, in overcrowded holding cells with inadequate food, water, sleeping and sanitation facilities, or medical attention, for periods of time in excess of 72 hours, violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution and other legal rights, giving rise to causes of action in habeas corpus. *See Nunez v. Boldin, supra. See also, DeShaney v. Winnebago Cty. Dep't of Soc. Servs* , 489 U.S. 189, 199-200 (1989):

> When the State takes a person into custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being: Under this rationale, the State must provide for a detainee's "basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety.

51. Many class members have expressed a fear of return to their home countries, and are entitled to credible/reasonable fear interviews.  Such interviews are not being given, and cannot be given, while they are detained in CBP facilities.  The decision to keep such individuals in CBP custody, when they have been detained for more than 72 hours, violates their rights under 8 C.F.R. §208.30 and §208.31,

and is therefore cognizable in habeas corpus.

52.  It is therefore urged that this Honorable Court issue Writs of Habeas Corpus, ordering that the named Petitioners and all other members of the putative class who have been detained for more than 72 hours, either be immediately released with an electronic tracking device, at no cost to the detainee, or that a reasonable bond, not to exceed $2,500, be set.

## CLASS-WIDE DECLARATORY AND INJUNCTIVE RELIEF
## B.  DUE  PROCESS

53.  Plaintiffs incorporate by reference the allegations of paragraph 1-52 above.

54.  Plaintiffs, on their own behalf and on behalf of all others similarly situated, bring this action under the Due Process Clause of the Fifth Amendment.  *See, e.g., Davis v. Passman,* 442 U.S. 228, 243–44 (1979):

> Like the plaintiffs in *Bolling v. Sharpe, supra*, petitioner rests her claim directly on the Due Process Clause of the Fifth Amendment. She claims that her rights under the Amendment have been violated, and that she has no effective means other than the judiciary to vindicate these rights. We conclude, therefore, that she is an appropriate party to invoke the general federal-question jurisdiction of the District Court to seek relief. She has a cause of action under the Fifth Amendment.

55.  Here, too, Plaintiffs have no effective means other than the judiciary to vindicate their rights to food, clothing, shelter, medical care, and reasonable safety while in the detention of CBP.  Plaintiffs, on their own behalf and on behalf of all others similarly situated, therefore seek a declaration that Defendants are

materially violating their constitutional rights and that the Court corresponding injunctive relief, mandating that non-U.S. citizens detained in facilities under the control of CBP, including any private facilities under contract with CBP, be maintained in safe and sanitary facilities, which provide, at a minimum:

1) On arrival, and before being placed with the general population:

a) That they be checked by a medical professional for signs of any illness or medical condition, contagious or otherwise, as well as for lice and ticks,

b) Following such a check-up, that they be given any appropriate medical care or testing, as advised by the medical professional who conducted the check-up;

c) If the medical professional finds that a detainee is likely suffering from a contagious disease, that said person be transferred to another facility or clinic where s/he is not likely to infect other detainees and if the medical professional determines that the detainee's condition is sufficiently grave as to warrant hospitalization, that s/he be promptly transferred to a hospital;

d) That CBP determine whether there is reason to believe that the detainee has been convicted of an offense which would be classified as a "violent or dangerous" crime within the meaning of 8 C.F.R. §212.7(d), and if so, that said detainee not be housed with the general population at the CBP facility, but in a location where s/he would not pose a danger to other detainees, and

e) If the detainee is an infant or toddler who is not toilet trained, said child be detained, if feasible, with the adult or older sibling with whom s/he was detained and be provided with diapers and age appropriate clothing and food.

2) At all times during detention, that class members have unlimited access to clean, potable, drinking water, from a source not needing to be heavily chlorinated in order to be safe for drinking;

3)   By the time they have been in CBP detention for 12 hours, they be given:

   a)   A meal containing at least 20 grams of protein, one serving each of fruit and vegetables, and consisting at least 1,500 calories,

   b)   Access to facilities for showering or bathing, if only for "sponge baths,"

   c)   Such necessary supplies as soap, towels, toothbrushes and toothpaste, and sufficient bedding that they are not required to sleep directly on the floor, and have something with which to cover themselves,

   d)   Clean clothing, including socks, and if the class member does not have functional shoes, a pair of shoes, and

   e)  The ability to make one completed telephone call lasting at least five minutes.

4)   Starting when they have been in CBP detention for 24 hours, class members be provided:

   a)  Meals containing a daily total of at least 2,500 calories, and including at least 40 grams of protein, and two servings each of fruit and vegetables;

   b)  The ability to receive messages from the office of any attorney, including a telephone number where that attorney can be reached;

   c)  The ability to make a second (completed) telephone call lasting at least five minutes, and if they have the telephone number of an attorney, to make at least one (completed) telephone call per day, lasting at least ten minutes, to his/her office in a private location;

   d)  Continued access to such necessary supplies as soap, towels, toothbrushes and toothpaste, and sufficient bedding that they are not required to sleep directly on the floor, and have something with which to cover themselves.

5)   That any attorney who comes to the facility and requests access to a given detainee be allowed to speak with that detainee in private, and in a manner allowing the attorney to obtain the detainee's signature on legal documents;

6)  That any class member who has been detained by CBP in excess of 72 hours either be released with an electronic monitoring device, at no cost to the detainee, or under a bond not to exceed $2,500, and

7)  That class counsel and/or their representatives be allowed, with or without a medical professional, on at least 24 hours notice, on any day except a designated federal holiday, or on any day, and with no more than 2 hours notice, in the event class counsel represents that there is a suspected medical emergency, be allowed to enter the facility and spend at least one hour examining the facilities and speaking either with random detainees or previously identified detainees.

### C.  THE TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT, ("TVPRA").

56.  Petitioners incorporate by reference the allegations of paragraph 1-55 above.

57.  On information and belief, it is alleged that some members of the putative class are entitled to, but are not receiving, the protections of The Trafficking Victims Protection Reauthorization Act, ("TVPRA"), which provides in relevant part, 8 U.S.C. §1232(b)(3), that:

> (3) TRANSFERS OF UNACCOMPANIED ALIEN CHILDREN-
> Except in the case of exceptional circumstances, any department or agency of the Federal Government that has an unaccompanied alien child in custody shall transfer the custody of such child to the Secretary of Health and Human Services not later than 72 hours after determining that such child is an unaccompanied alien child.

Section 1232(b)(2) of the TVPRA further requires that:

> Each department or agency of the Federal Government shall notify the Department of Health and Human Services within 48 hours upon – (A) the apprehension or discovery of an unaccompanied alien child; or (B) any claim or suspicion that an alien in the

custody of such department or agency is under 18 years of age.

Upon information and belief, Respondents have violated the TVPRA by failing to notify HHS of minors' claims that they are children in compliance with Section 1232(b)(2)(B). The U.S. Department of Health and Human Services ("HHS") is the only agency qualified to conduct age determinations, as further explained by the statutory language below.

58.  With respect to determining the child's age, the TVPRA provides, at (b)(4):

> (4) Age determinations
>
> The Secretary of Health and Human Services, in consultation with the Secretary of Homeland Security, shall develop procedures to make a prompt determination of the age of an alien, which shall be used by the Secretary of Homeland Security and the Secretary of Health and Human Services for children in their respective custody. At a minimum, these procedures shall take into account multiple forms of evidence, including the non-exclusive use of radiographs, to determine the age of the unaccompanied alien.

59.  On information and belief, it is alleged that CBP is not following §1232(b)(3) with respect to some teen-age unaccompanied children, but is arbitrarily refusing to accept such evidence as the child's foreign birth certificate, arbitrarily and without any factual basis accusing the child of having a false birth certificate, and without obtaining confirmation of same from such sources as the Consulate of the country of which the child claims to be a native and citizen. Instead, CBP is holding such children in facilities with adults, under

the same horrendous conditions, for days or weeks, until the child finally falsely "admits" to being eighteen years of age, and is then transferred to ICE custody. *See,* Exhibit E, hereby incorporated by reference.

60. Under the All Writs Act, "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). Although mandamus "is an extraordinary remedy for extraordinary causes," the failure of the United States government to afford migrant children their rights under the law merits mandamus consideration. *See United States v. Denson*, 603 F.2d 1143, 1146 (5th Cir. 1979) (en banc).

## D. THE ADMINISTRATIVE PROCEDURE ACT

61. Petitioners incorporate by reference the allegations of paragraph 1-60 above.

62. Petitioners also seek relief, for themselves individually and for the class they seek to represent, under the Administrative Procedure Act, 5 U.S.C. §702 et seq. The decision to detain Petitioners and the class they seek to represent for more than 72 hours, rather than transferring them to ICE facilities or releasing them with ankle bracelets, (or in the case of those who claim to be minors, without providing the notice required by the TVPRA). Their detention without access to counsel in overcrowded holding cells without adequate food, water, and sanitation or sleeping facilities, for more than 72 hours, violates the Due Process

Clause of the Fifth Amendment to the U.S. Constitution and other legal rights, giving rise to causes of action under the APA.

63. Many class members have expressed a fear of return to their home countries, and are entitled to credible/reasonable fear interviews. Such interviews are not being given, and cannot be given, while they are detained in CBP facilities. The decision to keep such individuals in CBP custody, when they have been detained for more than 72 hours is a final agency action for which no adequate judicial remedy exists, and is therefore cognizable under the APA.

Putative class members have suffered or will suffer a "legal wrong," and have been or will be "adversely affected or aggrieved" by Defendant's actions. Class members are unable to receive visits from legal counsel, are detained without adequate food, water, sleeping, medical and sanitation facilities, and are often forced or coerced into signing documents, in some cases, falsely "agreeing" that they are adults, in order to be transferred to ICE facilities. In other cases, class members may be unaware of the contents of such documents, which may facilitate their removal from the United States, regardless of whether they have been persecuted, or have a well-founded fear of future persecution in their home countries. Similar restrictions were held to be "unduly restrictive" and could amount to "intimidation" which would be a "violation of fundamental law."

*Nunez v. Boldin, supra*, 573 F.Supp. at 583. [13]

51. The decision by Respondents to continue the detention of a given detainee in a CBP holding cell beyond the 72 hours for which they claim the right to continue such detention, rather than releasing him/her with an electronic tracking devices, as was the practice in prior years, or transferring him/her to the custody of ICE,[14] in order that they be moved to actual detention centers, such as PISPC, is a final agency action within the meaning of 5 U.S.C. §704, for which there is no other adequate remedy in a court. Such actions therefore are subject to judicial review under the Administrative Procedure Act.

52. Under 5 U.S.C. §706, this Court therefore is urged to issue a Declaratory Judgment, declaring such agency unlawful, on the grounds that they are:

---

[13] Whether individual class members' causes of action for denial of access to the courts "turns on a litigating opportunity yet to be gained or an opportunity already lost," cannot yet be determined, since access to counsel is a prerequisite to making such determinations. *See, e.g., Christopher v. Harbury*, 536 U.S. 403, 414–15 (2002):

> While the circumstances thus vary, the ultimate justification for recognizing each kind of claim is the same. Whether an access claim turns on a litigating opportunity yet to be gained or an opportunity already lost, the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong. However unsettled the basis of the constitutional right of access to courts, our cases rest on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court.

[14] If Defendants suspect a detainee of criminal conduct other than violations of 8 U.S.C. §1325, immediate transfer to ICE is the most appropriate remedy, so as not to endanger detained asylum seekers who presented themselves to CBP in order to seek asylum, and are not suspected of serious criminal activity.

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

53.   The Court is also urged to issue an injunction, enjoining and restraining Respondents from holding for longer than 72 hours any class member in a CBP facility which is not designed or equipped for long-term detention, and/or does not allow attorney visits, and to immediately release, with or without an electronic monitoring device, any members of the putative class who have been detained in such facilities for more than two weeks.

## PRAYER FOR RELIEF

WHEREFOR, Petitioners respectfully request that this Court:

1)      Assume jurisdiction over the instant action;

2)      Certify this case as a class action, as proposed herein;

3)      Declare unlawful the actions of Respondents in holding Petitioners and members of the class they seek to represent in CBP holding cells within the jurisdiction of this Court for periods of time exceeding 72 hours, on the grounds that said actions are contrary to law and violate Due Process;

4)   Issue an injunction, as detailed above, restraining and enjoining Respondents from not curing the above defects, and from continuing to intimidate class members, including those covered by the TVPRA;

5) Issue a mandamus, as detailed above, requiring CBP to comply with the TVPRA, particularly in reporting migrant children to HHS custody, and refraining from transferring migrant children to adult immigration detention.

6)    It is further urged that the Court grant such order and further relief as the Court deems appropriate and just, including an award of court costs and attorneys' fees.

Respectfully submitted,

s/ Elisabeth (Lisa) Brodyaga, Attorney in charge
REFUGIO DEL RIO GRANDE
17891 Landrum Park Rd.
San Benito, TX 78586-7197
Federal ID: 1178
Texas Bar: 03052800
(956) 421-3226
LisaBrodyaga@aol.com

s/  Jaime M. Diez , Attorney            Thelma O. Garcia, Attorney
JONES and CRANE                          LAW OFFICE OF THELMA GARCIA
PO BOX 3070                              301 E. Madison
Brownsville, TX 78523-3070              Harlingen, TX 78550-4907
Federal Id: 23118                       Federal ID: 3449
Texas State Bar: 00783966              Texas State Bar:  07646600
(956) 544-3565                          (956) 425-3701
(956) 550-0006 (fax)                   (956) 428-3731
JaimeMDiez@aol.com                      lawofctog@gmail.com

Manuel Solis, Attorney
Law Offices of Manuel Solis
P.O. Box 230529

Houston, Texas 77223-0529
Fed ID: 36113
State Bar: 18826790
[msolis@lawsolis.com](mailto:msolis@lawsolis.com)